# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IRIS NAOMI RODRIGUEZ,** | : | **Civil No. 1:18-CV-684** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.      Introduction

In the instant case, the plaintiff, Iris Rodriguez, sought disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, alleging that fibromyalgia, osteoarthritis, chronic obstructive pulmonary disease and other ailments had rendered her totally disabled. Notably, Rodriguez's disability application was unaccompanied by any medical source statement containing an opinion supporting her claim of total disability, and Rodriguez's medical records indicated that, while she experienced a number of impairments, she retained the ability to perform many functions. In fact, Rodriguez continued to work on a part-time basis during much of this claimed period of

1

disability. Accordingly, the Administrative Law Judge (ALJ) who reviewed this case denied Rodriguez's application for benefits.

Rodriguez has appealed this adverse administrative ruling and it now falls to the court to review this disability determination. In evaluating this Social Security appeal, we are enjoined to apply a deferential standard of review, which calls upon us simply to determine whether substantial evidence, a quantum of proof that is less than a preponderance but more than a scintilla of evidence, supports the ALJ's findings. Given this deferential standard of review, we conclude that substantial evidence exists in this case that justified the ALJ's decision that led to the denial of this particular claim. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.     Statement of Facts and of the Case

On October 14, 2014, Iris Rodriguez applied for disability and supplemental security insurance benefits pursuant to Titles II and XVI of the Social Security Act. (Tr. 15.) In this application, Rodriguez alleged that she had become disabled beginning in January of 2013 as a result of the combined effects of fibromyalgia, osteoarthritis, chronic obstructive pulmonary disease and other ailments. (Tr. 15, 17.) Rodriguez was 47 years old on the date of onset of her alleged disability. (Tr.

22.) She had completed high school and, prior to the alleged onset of her disability, had worked as a pharmacy technician and food service worker. (Tr. 21.)

Aside from a brief notation asking that Rodriguez be excused from jury duty because her symptoms made it difficult for her to sit for prolonged periods without pain (Tr. 330), there appear to be no medical source statements from any treating or examining source that supports Rodriguez's claim that she is totally disabled due to these impairments. Indeed, Rodriguez continued to work part-time as a pharmacy technician after her 2013 alleged onset of disability until December 2016 (Tr. 32, 154-55, 157-58.) Moreover, Rodriguez did not initially report that she was wholly disabled. In particular, in a February 2015 function report, Rodriguez indicated that that she prepared simple meals; did light housework with the help of her sister such as ironing, laundry, and sweeping the outside porch with a broom; used public transportation; shopped in stores for groceries and clothes; handled her personal finances; watched television; read magazines, and listened to the radio. (Tr. 186-88.) She noted no difficulty with understanding, completing tasks, or concentration. (Tr. 189.)

Further, while Rodriguez's treatment records contained no opinions by care-givers that she was completely disabled from working, they disclosed that she had received care for joint pain but retained significant ability to perform many activities.

These treatment records also indicated that Rodriguez was able to mitigate many of these symptoms with over-the-counter medications and that she had successfully discontinued use of opioids for pain management.

During this time frame, Rodriguez's primary care physician was Dr. Ernesto Gutierrez. (Tr. 314-60, 772-827.) In January 2013, Rodriguez was seen by Dr. Gutierrez for a follow-up for her fibromyalgia symptoms and osteoarthritis. (Tr. 314.) At that time, Rodriguez stated that she was experiencing continued knee pain that was worse with use and better with rest. (Id.) According to Rodriguez, her over-the-counter bracing and opioid medication helped control her pain. (Id.) Upon examination, Dr. Gutierrez found that Rodriguez had a normal gait and 11 of 18 positive tender points, but exhibited a full range of motion in all areas aside from her knees and right foot. (Tr. 314-15.)

Two months later, in March 2013, Rodriguez was seen by David Maish, M.D., an orthopedic surgeon, for her knee pain. (Tr. 422.) At that time, Rodriguez explained that she had been receiving corticosteroid injections, which provided her a month or two of symptomatic relief and reported that her ambulation was limited to about a mile and she had difficulty with stairs. (Id.) On examination, Rodriguez walked with an antalgic gait and displayed some medial joint tenderness. (Id.)

However, she had full 5/5 strength in flexion-extension, knees, ankles, and toes, and was distally neurovascularly intact. (Id.)

Rodriguez was diagnosed with arthritis and was given a corticosteroid injection in both knees. (Id.) Rodriguez's treatment records for the balance of 2013 revealed no significant deterioration of her functioning; some improvement in her discomfort as a result of weight loss and medication; and indicated that her pain was generally limited to her right knee. (Tr. 317.) Rodriguez's condition was assessed as stable with medication and injections, and it was reported that she had an unimpaired gait and maneuvering ability (Tr. 320, 323).

Rodriguez's medical records from 2014 were likewise largely unremarkable. In January 2014, Dr. Gutierrez observed that Rodriguez had not used opioid pain medication since March 2013, and her symptoms were effectively mitigated with ibuprofen. (Tr. 326-27.) No physical abnormality or functional deficiency was noted on physical examination at that time aside from mild crepitus, or creaking, of her joints and some discomfort in her knees. (Tr. 327.) Seven months later, in October 2014, Rodriguez reported that she had been off all medication since April 2014 due to loss of health benefits, but examination revealed no significant change in her condition since earlier reports, except for an asthma flare up and feeling more depressed. (Tr. 331.)

In 2015, Rodriguez underwent a surgical procedure on her right knee. During an orthopedic evaluation in January 2015, Rodriguez indicated that she wished to undergo a right knee replacement because of decreased efficacy of cortisone injections and no relief from physical therapy. (Tr. 413.) She underwent this procedure in February 2015, (Tr. 372), and a one week later reported minimal knee pain and demonstrated a normal gait using a walker. (Tr. 498). Two weeks after her procedure, Rodriguez reported walking increased distances with further improvements in her pain. (Tr. 501.) By April 2015, she reported steady improvements in her range of motion in her right knee with therapy, and ambulated without the use of an assistive device. (Tr. 863.) Rodriguez also received an injection to alleviate pain in her left knee. (Id.) Primary care progress notes from May through December 2015 only described complaints of "mild to moderate" achiness in Rodriguez's knees, (Tr. 788, 793, 800), and she reported that she returned to work part-time in June 2015. (Tr. 853.) Physical examinations during this period also reported painless range of motion in her knees up to at least 90 degrees. (Tr. 834, 844, 853.) In addition, medical records acknowledged that Rodriguez could perform some work, in that she was given a note that she could work four hours per day with no prolonged bending, stooping, squatting, or kneeling, and no standing or walking for over 45 minutes per hour. (Tr. 853.) For her part, Rodriguez continued to report

significant relief of her residual discomfort in her left knee with cortisone injections. (Tr. 834, 844, 853.)

Rodriguez's emotional state was also largely stable during this time. In the Spring of 2015, Sandra Banks, Ph.D., a state agency psychologist, reviewed Rodriguez's medical records and concluded that she did not have a severe mental impairment, as she had mild restriction of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (Tr. 54-55.) Likewise, an agency Single Decision Maker (SDM), Valerie McCartt, opined in April of 2015 that Rodriguez could perform sedentary work. (Tr. 60-9.)[1]

Finally, in the Spring of 2016, medical records identified carpel tunnel syndrome as another potential impairment for Rodriguez. Specifically, medical notes from April 2016 described Rodriguez's reports of numbness in her hands in

---

[1] On appeal, the plaintiff initially brought, but then abandoned, an argument based upon the premise that McCartt's opinion was a medical source opinion from a doctor which was entitled to greater weight by the ALJ. (Doc. 10, at 19.) Rodriguez has prudently abandoned this argument since: "Courts have observed that a SDM is not a medical professional, and that such opinions are entitled to no evidentiary weight. See Yorkus v. Astrue, No. 10–2197, 2011 WL 7400189, at *4 (E.D. Pa. Feb. 28, 2011)." Bryant v. Colvin, No. 4:14-CV-981, 2015 WL 1401001, at *4 (M.D. Pa. Mar. 26, 2015).

addition to her chronic fibromyalgia pains. (Tr. 763.) EMG testing at that time yielded findings of bilateral carpal tunnel syndrome, greater on the right than the left. (Tr. 766.) However, orthopedic treatment records from April 2016 documented full strength and range of motion in her wrists and fingers, aside from difficulty with right thumb flexion. (Tr. 703.)

It was against the factual and medical backdrop that the ALJ conducted a hearing into Rodriguez's disability application on March 3, 2017. (Tr. 28-48.) The plaintiff and a Vocational Expert both appeared and testified at this hearing. (Id.)

Following this hearing, on April 4, 2017, the ALJ issued a decision denying Rodriguez's application for disability benefits. (Tr. 12-23.) In this decision, the ALJ first found that Rodriguez met the insured requirements of the Act, (Tr. 15), and then at Step 2 of the five-step sequential analysis process that applies to Social Security disability claims, found that Rodriguez's fibromyalgia, osteoarthritis, and chronic pulmonary obstructive disease, were all severe impairments. (Id.) The ALJ further identified her carpel tunnel syndrome, hearing impairment, and depression as conditions that were not severe. (Tr. 16.) The ALJ then found that none of these impairments met the criteria of a Social Security listing, which would have prescribed Rodriguez as *per se* disabled. (Tr. 18-19.)

Having made these findings, the ALJ concluded that Rodriguez had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). (Tr. 19.) Given this residual functional capacity assessment, the ALJ determined at Step 4 of this sequential analysis that Rodriguez could not return to her past employment, (Tr. 21-22), but found at Step 5 that she retained the ability to perform other sedentary work in the national economy. (Tr. 22-23.) Accordingly, the ALJ concluded that Rodriguez had not met the exacting standards of disability prescribed by law and denied her claim for these disability benefits. (Id.)

This appeal followed. (Doc. 1.) On appeal, Rodriguez launches a threefold challenge this ALJ decision, specifically arguing that the ALJ erred in failing to find that she was *per se* disabled at Step 3 of this analysis; erred in concluding that Rodriguez had the residual functional capacity to perform light work; and failed to fully take into account Rodriguez's reported fatigue caused by her medications.

This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies to this case, the ALJ's decision will be affirmed.

## II.    Discussion

### A.    Substantial Evidence Review – The Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues....").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements ... are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). §§ 404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts

in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all

of the facts and evidence. <u>See</u> <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also</u> <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

16

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence, the court

may not parse the record but rather must scrutinize the record as a whole. <u>Smith v.</u>

<u>Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### D. **Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

The interplay between the deferential substantive standard of review that

governs Social Security appeals, and the requirement that courts carefully assess

whether an ALJ has met the standards of articulation required by law, is also

illustrated by those cases which consider analysis of a claimant's reported pain.

When evaluating lay testimony regarding a claimant's reported degree of pain and

disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. <u>See Diaz v. Comm'r</u>, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir.1994) (citing <u>Stewart v. Sec'y of Health, Education and Welfare</u>, 714 F.2d 287, 290 (3d Cir.1983)); <u>see also Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)).

<u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

18

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings, but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is

19

not required to credit them." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." <u>Hantraft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to: medical signs and laboratory findings,

20

diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted

sub nom. <u>Koppenhaver v. Berryhill</u>, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); <u>Martinez v. Colvin</u>, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### E.     <u>Step 3 Analysis—Guiding Principles</u>

This dichotomy between the Act's deferential standard of review and caselaw's requirement that ALJs sufficiently articulate their findings to permit meaningful judicial review is particularly acute at Step 3 of this disability evaluation process. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se* and is awarded benefits. 20 C.F.R. § 416.920(d); <u>Burnett</u>, 220 F.3d

at 119.  However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d).  An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient.  Id.

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under step three, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An administrative law judge is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. Maddox v. Heckler, 619 F. Supp.  930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014), available at Westlaw SSFEDCT.  However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  Burnett, 220 F.3d  at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is

23

beyond meaningful judicial review." <u>Burnett</u>, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." <u>Jones</u>, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," <u>id</u>., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review," a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. <u>Burnett</u>, 220 F.3d at 119.

> F.   **<u>Substantial Evidence Supports the ALJ's Findings in this Case.</u>**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial

evidence supported the decision by the ALJ that Ms. Rodriguez could perform a limited scope of light work and was not disabled.

At the outset, we are constrained to observe a relative paucity of proof in support of this particular claim. Unlike many cases, Ms. Rodriguez's disability application appears to have been unsupported by any treating source medical opinion describing her condition as totally disabling. Furthermore, it is evident that Rodriguez worked on a part-time basis during much of this period of claimed disability, a factor which was also noted by the ALJ. In addition, Rodriguez's treatment records frequently described her medical condition in terms that were less than completely disabling. These three factors combined to undermine Rodriguez's claim for disability benefits.

Notwithstanding these evidentiary weaknesses in her claim, Rodriguez argues at the outset that the ALJ erred in failing to find her condition so severe that she should have been deemed per se disabled at Step 3 of this analytical process. Such Step 3 arguments must meet exacting standards of proof. To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how

severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

Here, Rodriguez argues that she met the strict requirements of Listing 1.02 and 1.03, which deal with musculoskeletal impairments. However, this argument does not withstand careful scrutiny since Listing 1.02(A) requires proof of gross anatomical deformity or findings on acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint, none of which are present in the instant case. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(A). Likewise, the evidence does not show that Rodriguez's impairments met all of the criteria of Listing 1.03, which requires surgical arthrodesis of the knee:

> With inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. 20 C.F.R. pt. 404, subpt. P, app. 1, Listing § 1.03.

The regulations define inability to ambulate effectively as:

> An extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Id. § 1.00(B)(2)(b).

The plaintiff bears the burden of proof at Step 3 and must introduce evidence satisfying all elements of a listing in order to be found disabled, *per se*. In this case, given the lack of any medical opinion evidence supporting this disability claim, the relatively modest treatment record, and Rodriguez's ability to work part-time during the period of claimed disability, substantial evidence supported the ALJ's conclusion that Rodriguez had not made the exacting showing necessary to sustain her claim at Step 3. This claim therefore fails.

Rodriguez also launches a twofold attack upon the ALJ's residual functional capacity assessment in this case, arguing that the ALJ erred by failing to give sufficient credence to her severe impairments, and by failing to treat her depression, carpel tunnel syndrome and hearing deficit as severe impairments at Step 2 of this sequential analysis. As we have noted, Rodriguez has cited to no treating source opinion which supports her claim of complete disability. In this setting, where there is no apparent expert testimony supporting a disability claim, an ALJ may rely upon other evidence, such as clinical evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC. When an ALJ is put to crafting an RFC in the absence of medical source statements, courts often adopt a pragmatic view, which sustains the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006);

Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). Our review of the ALJ's assessment of the plaintiff's RFC then is deferential, and that RFC assessment should not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

In this case, in the absence of any treating source opinions supporting Rodriguez's claim, the ALJ carefully canvassed her treatment history. (Tr. 19-21.) That treatment history addressed all of Rodriguez's impairments, both severe and non-severe, but contained multiple entries which undermined her claim of disability, including notations which confirmed her ability to ambulate, perform part-time work, wean herself off of pain medication, and display significant strength and range of motion in her extremities. (Id.) These medical records, therefore, provided sufficient evidentiary support for the ALJ's RFC determination, which limited Rodriguez to a range of light work.

Further, as for Rodriguez's complaint that the ALJ erred at Step 2 by failing to treat her depression, carpel tunnel syndrome and hearing deficit as severe

impairments, while "[t]he burden placed on an applicant at step two is not an exacting one." <u>McCrea v. Comm. of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir.2004):

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. <u>See Nosse v. Astrue</u>, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

> <u>McClease v. Comm. of Soc. Sec.</u>, No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); <u>see also</u> <u>Salles v. Comm. of Soc. Sec.</u>, 229 F.Appx. 140, 145, n. 2 (3d Cir. 2007) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

<u>Stouchko v. Comm'r of Soc. Sec.</u>, No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014).

Here, we find no error in the ALJ's consideration of Rodriguez's depression and carpel tunnel syndrome at Step 2. For example, with respect to Rodriguez's emotional condition, in the Spring of 2015, Sandra Banks, Ph.D., a state agency psychologist, reviewed Rodriguez's medical records and concluded that she did not have a severe mental impairment, as she had mild restriction of activities of daily

living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (Tr. 54-55.) These findings fully supported the ALJ's Step 2 assessment of this condition. Likewise, as for Rodriguez's carpel tunnel syndrome, in the Spring of 2016, medical notes from April 2016 described Rodriguez's reports of numbness in her hands in addition to her chronic fibromyalgia pains. (Tr. 763.) EMG testing at that time yielded findings of bilateral carpal tunnel syndrome, greater on the right than the left. (Tr. 766.) However, orthopedic treatment records from April 2016 also documented full strength and range of motion in her wrists and fingers, aside from difficulty with right thumb flexion. (Tr. 703.) These equivocal reports also justified the ALJ's Step 2 evaluation of this condition. Finally, while the ALJ's decision may have understated the degree of Rodriguez's hearing impairment when it stated that there was no support for this condition, (Tr. 18), any error on this score was harmless where there was no evidence that Rodriguez's hearing deficits precluded her from working, and she had in fact worked for many years despite these hearing problems. Therefore, these Step 2 challenges to the ALJ's residual functional capacity determination do not compel a remand of this case.

Finally, Rodriguez argues that the ALJ erred in partially discounting her claims regarding the severity of her symptoms. In particular, the plaintiff contends

that the ALJ erred in failing to fully assess her complaints that her medication created a degree of fatigue that prevented her from working. However, guided by the deferential standard of review that applies here, we conclude that these symptom evaluation determinations are supported by substantial evidence. In this regard, we are cautioned that we should "defer[] to the ALJ's assessment of credibility," provided that the ALJ "specifically identif[ies] and explain[s] what evidence he found not credible and why he found it not credible." Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014). Likewise, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler, 667 F.3d at 363. In particular, such subjective complaints may be discounted when they are inconsistent with objective medical and opinion evidence. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

That is precisely what transpired here. In this case, the ALJ explained that Rodriguez's testimony concerning the severity of her symptoms was not entirely credible. Moreover, as the ALJ noted, Rodriguez's medical records disclosed that she frequently refrained from taking this medication but demonstrated no significant change in her functional ability. (Tr. 20.) Given the deference owed to this credibility determination, that decision, which is supported by substantial evidence, also should not be disturbed on appeal.

In sum, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Rodriguez can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence could have been further explained, or might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons,  IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFRIMED.

An appropriate order follows.

Submitted this 30th day of May 2019.


                                        /S/ Martin C. Carlson
                                        Martin C. Carlson
                                        United States Magistrate Judge